UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROSALIE LOLONGA-GEDEON,

**DECISION**
Plaintiff,                          **and**
v.                                   **ORDER**

CHILD & FAMILY SERVICES,                          **08-CV-00300A(F)**

Defendant.
_____

APPEARANCES:        ROSALIE LOLONGA-GEDEON, *Pro Se*
410 Remington Pt.
Apartment 205
Greenwood, Indiana 46143-8078

HODGSON RUSS LLP
Attorneys for Defendant
ADAM W. PERRY, and
JOSHUA ISAAC FEINSTEIN, of Counsel
140 Pearl Street, Suite 100
The Guaranty Building
Buffalo, New York 14202

## JURISDICTION

This case was referred to the undersigned by Honorable Richard J. Arcara on

July 25, 2008.  The matter is presently before the court for *in camera* review of

documents which Defendant asserts are privileged and thus protected from disclosure.

## BACKGROUND and FACTS[1]

Plaintiff Rosalie Lolonga-Gedeon ("Plaintiff" or "Lolonga-Gedeon"), an African-

American woman who had immigrated from Central Africa (Congo), commenced this

_____

[1] The Facts are taken from the pleadings and motion papers filed in this action.

employment discrimination action on April 18, 2008, alleging Defendant Child & Family Services ("Defendant" or "CFS"), discriminated against her based on race, color, sex and national origin, and retaliated against Plaintiff for complaining about said discrimination and terminated her employment.  Defendant's answer was filed on July 23, 2008 (Doc. No. 5).

Plaintiff essentially alleges that after commencing employment as a Senior Case Manager in Defendant's Chautauqua County office in February 2005, Defendant repeatedly harassed Plaintiff about her accent which Defendant asserted interfered with Plaintiff's job performance, failed to accept Plaintiff's assertion that Plaintiff had earned the equivalent of a Bachelor's degree, a requirement for Plaintiff's Senior Case Manager position with Defendant, and that when Plaintiff complained of the harassment, Defendant retaliated against Plaintiff by terminating her employment on March 27, 2007.  On May 30, 2007, Plaintiff pursued administrative remedies by filing an employment discrimination charge with New York State Division of Human Rights ("DHR"), which, on December 12, 2007, issued a Determination and Order after Investigation finding no evidence supporting Plaintiff's claims of employment discrimination.

On June 30, 2010, Plaintiff served Defendant with discovery requests including document requests(Doc. No. 44) ("Document Requests"), and interrogatories (Doc. No. 45) ("Interrogatories") (together, "Discovery Requests").  Defendant responded to the Document Requests by serving Plaintiff with 850 Bates stamped responsive pages.  On August 20, 2010, Defendant served Plaintiff with a privilege log ("First Privilege Log"), identifying 45 documents otherwise responsive to the Document Requests, but withheld

as protected by the attorney-client privilege, work-product doctrine, and a mediator's privilege pursuant to New York law. Defendant served Plaintiff with a second privilege log dated July 27, 2011 ("Second Privilege Log"), listing three items withheld on the basis of privilege. On October 14, 2011, Plaintiff filed a motion (Doc. No. 99) seeking to compel discovery in response to Plaintiff's Discovery Request and requesting *in camera* review of certain documents Defendant maintains are protected from disclosure by various privileges. In a Decision and Order filed December 9, 2011 (Doc. No. 129) ("Dec. 9, 2011 D&O"), the undersigned directed Defendant to submit for *in camera* review each document Defendant claims is privileged or work-product protected, and a memorandum of law explaining the basis for asserting each document is either irrelevant to Plaintiff's Discovery Requests, privileged, or protected from disclosure. Dec. 9, 2011 D&O at 4. Defendant served Plaintiff with a third privilege log dated January 12, 2012 ("Third Privilege Log"), listing two additional documents Defendant maintains are protected from disclosure.

On January 13, 2012, Defendant, in compliance with the Dec. 9, 2011 D&O, filed the Declaration of Joshua Feinstein, Esq. (Doc. No. 142) ("Feinstein Declaration"), attached to which as exhibits ("Defendant's Exh(s). __") are the First, Second, and Third Privilege Logs (Defendant's Exhs. A, B, and C, respectively). The documents Defendant identified in the Privilege Logs as protected from disclosure were submitted to the court for *in camera* inspection, and filed under seal. Defendant also filed on January 13, 2012, the Affidavit of Dan Weitz (Doc. No. 143) ("Weitz Affidavit"),[2] and

[2] Pursuant to an E-Filing Notification dated January 17, 2012, advising that the last three pages were not fully legible, Defendant refiled the Weitz Affidavit on January 18, 2012 (Doc. No. 146).

Defendant Child & Family Services' Memorandum of Law in Support of Assertion of

Privilege (Doc. No. 144) ("Defendant's Memorandum").  Plaintiff has not filed any

papers opposing Defendant's assertions that the documents are privileged.


## DISCUSSION

### 1.    Privilege

Defendant has submitted three privilege logs containing a total of 52 entries and

58 pages of documents Defendant has withheld from producing to Plaintiff on the basis

that such documents are protected as attorney-client communications, work product, or

mediation materials.  Because resolution of the instant action involves federal

substantive law, *e.g.*, Title VII, federal common law governs Defendant's claims of

privilege.  Fed.R.Civ.P. 501; *see Von Bulow v. Von Bulow*, 811 F.2d 136, 141 (2d Cir.

1987) (holding federal law of privilege controls where evidence sought is relevant to

both federal and pendent state claims).  It is basic that privileged documents are

exempt from disclosure.  *United States v. Construction Products Research, Inc.*, 73

F.3d 464, 473 (2d Cir. 1996) (citing *United States v. Morton Salt Co.*, 338 U.S. 632, 639

(1950)).  The burden is on the party asserting the privilege to establish the essential

elements of the asserted privilege, *id.* (citing *United States v. Adlman*, 68 F.3d 1495,

1499 (2d Cir. 1995); and *In re von Bulow*, 811 F.2d 136, 144 (2d Cir.), *cert. denied*, 481

U.S. 1015 (1987)), as well as the absence of any waiver.  *In re Grand Jury*

*Proceedings*, 219 F.3D 175, 191 (2d Cir. 2000) (observing work product protection can

be waived by disclosing or putting at issue subject of asserted protected documents);

*S.E.C. v. Gupta*, __ F.Supp.2d __; 2012 WL 990779, at * 4 (S.D.N.Y. Mar. 26, 2012)

(attorney waived work product by disclosing to third-party witness who did not share a common interest with client). *United States v. Int'l. Bhd. of Teamsters,* 119 F.3d 210, 214 (2d Cir. 1997) (waiver of attorney-client privilege and citing *United States v. Schwimmer*, 892 F.2d 237, 234 (2d Cir. 1989)).  *See also In re Keeper of the Records (XYZ Corp.),* 348 F.3d 16, 22 (1st Cir. 2003) ("the party who invokes the privilege bears the burden of establishing that . . . it has not been waived").

Defendant refers to each withheld document by its Bates stamped identifying number.  In particular, the 23 documents Defendant asserts as protected by the attorney-client privilege include CFS-PRIV0012 through CFS-PRIV0021, CFS-PRIV0023, CFS-PRIV0026, CFS-PRIV0041, CFS-PRIV0043 through CFS-PRIV0046, CFS-PRIV0051, CFS000085, CFS000301, CFS000859, CFS000876, and CFS000973. Defendants asserts the following 23 documents are protected from disclosure as work product, including CFS-PRIV0022, CFS-PRIV0024, CFS-PRIV0025, CFS-PRIV0027 through CFS-PRIV0040, CFS-PRIV0042, and CFS-PRIV0047 through CFS-PRIV0051.[3] Finally, Defendant maintains that 13 documents are shielded from disclosure pursuant to New York State Judiciary Law ("N.Y. Jud. Law")[4] § 849-b(6), including CFS-PRIV0001 through CFS-PRIV0011, CFS000023, and CFS000025.  The court discusses each of these documents and the asserted privilege in turn.

---

[3] Defendant asserts Bates No. CFS-PRIV0051 is protected both by the attorney-client privilege and as work product.

[4] References to N.Y. Jud. Law are to McKinney's 1986.

**2. Attorney-Client Privilege**

As stated, Defendant asserts 23 of the withheld documents are communications protected from disclosure by the attorney-client privilege, including documents CFS-PRIV0012 through CFS-PRIV0021, CFS-PRIV0023, CFS-PRIV0026, CFS-PRIV0041, CFS-PRIV0043 through CFS-PRIV0046, CFS-PRIV0051, CFS000085, CFS000301, and CFS000859, as well as redacted portions of CFS000876 and CFS000973. According to Defendant, these documents are communications between Defendant's outside counsel, Elizabeth D. Carlson, Esq. ("Carlson"), and CFS Senior Management including Human Resources Director Collette Romano ("Romano"), Executive Director Eugene Meeks ("Meeks"), Senior Vice President and Corporate Compliance Officer Robert Clark ("Clark"), Program Vice President Katey Joyce ("Joyce"), Vice President for Business and Finance Ian Long ("Long"), CFS Center for Resolution and Justice ("CRJ") Director Julie Loesch ("Loesch"), CRJ Director of Operations Michelle Tarbox ("Tarbox"), Senior Accountant Steve Freebern ("Freebern"), and Human Resources Specialists Kris Addotta ("Addotta"), and Amanda Diamond ("Diamond").

A party invoking the attorney-client privilege must demonstrate three elements, including (1) a communication between a client and counsel, (2) intended to be and kept confidential, and (3) made for the purpose of obtaining or providing legal advice or services. *Construction Products Research, Inc.*, 73 F.3d at 473 (citing *Fisher v. United States*, 425 U.S. 391, 403 (1976), *Adlman*, 68 F.3d at 1499, and *United States v. Abrahams*, 905 F.2d 1276, 1283 (9th Cir. 1990)).  Because the attorney-client privilege limits the admissibility of relevant evidence in judicial and other proceedings, it is strictly construed.  *International Broth. of Teamsters*, 119 F.3d at 214 (citing *In re Horowitz*,

482 F.2d 72, 81 (2d Cir.) (citing 8 Wigmore, EVIDENCE §§ 2192 at 70, 554 (1961)), *cert. denied*, 414 U.S. 867 (1973)).

When information that is otherwise protected by the attorney-client privilege is disclosed to third parties, the element of confidentiality is destroyed, and the privilege is waived.  *In re Horowitz*, 482 F.2d at 81 ("We deem it clear that subsequent disclosure to a third party by the party of a communication with his attorney eliminates whatever privilege the communication may have originally possessed, whether because disclosure is viewed as an indication that confidentiality is no longer intended or as a waiver of the privilege." (citing McCormick, Evidence § 93, at 197 (Cleary ed., 1972), and cases there cited)).  Even the dissemination of confidential and privileged information to persons within an organization not shown to have a need to know such information waives the attorney-client privilege.  *Robbins & Meyers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 93-94 (W.D.N.Y. 2011) (citing cases).  Further, communications between a client and attorney intended for publication or communication to third-parties are not intended to be confidential and, thus, are not within the attorney-client privilege. *Id.*, at 83-84 (citing cases); 5 MCCORMICK ON EVIDENCE § 91 at 408 (Kenneth S. Broun, 6th ed. 2006).

In the instant case, *in camera* review of each of the 23 documents for which Defendant asserts the attorney-client privilege is protected from disclosure establishes that the attorney-client privilege attached to 12 of the 23 documents, but as to the remaining 11 documents, the attorney-client privilege never attached, or attached but was waived when the otherwise privileged communications were shared with third-parties whom Defendant has failed to establish had a "need to know" the information

contained in those communications.  *Robbins & Meyers, Inc.*, 274 F.R.D. at 93-94.
Accordingly, those 11 communications are not protected by the attorney-client privilege
and must be produced.

 In particular,  Bates Nos. CFS-PRIV0012 through and including CFS-PRIV0015
are eight email messages exchanged between Carlson and Romano, between March 5
and March 8, 2007, in which are discussed concerns Romano had about terminating
Plaintiff and Romano requests from Carlson legal advice as to how CFS should
proceed to best avoid being accused of employment discrimination in the event CFS
decided to terminate Plaintiff's employment.  Nothing indicates these communications
were shared with others or that their confidentiality was otherwise destroyed.  As such,
these emails are protected by the attorney-client privilege and need not be disclosed.

 Bates No. CFS-PRIV0016 is an email dated March 14, 2007, from Addotta to
Carlson, forwarding, at Romano's request, a March 12, 2007 email Romano received
from Plaintiff.  Although the email is addressed to an attorney, the communication
seeks neither legal advice nor legal services.  As such, the attorney client privilege has
not attached to this communication, which must, accordingly, be disclosed.

 Bates No. CFS-PRIV0017 in a March 21, 2007 email from Romano to Meeks,
and Stewart, with copies to Joyce, Loesch, and Carlson, discussing Plaintiff.  Although
Carlson, an attorney, is copied on the email, the communication does not seek any
legal advice or services necessary for the attorney-client privilege to attach.  Even if the
privilege had attached, it was waived by the disclosure to the other recipients of the
communication for whom Defendant has failed to explained why such recipients
needed to know such information contained therein.  Although entries in Defendant's

8

First Privilege Log identify Meeks, Stewart, Joyce and Loesch as CFS employees, and

Defendant's answers to Plaintiff's interrogatories (Doc. No. 48), further establish that

Stewart is CFS Executive Vice President, and Loesch is CFS Director, Center for

Resolution and Justice ("CRJ"), such that this communication was shared only with CFS

employees, Defendant's failure to demonstrate that Meeks, Stewart, and Joyce each

needed to know the information contained in the communication has waived the

attorney-client privilege as to Bates No. CFS-PRIV0017.  *See Robbins & Meyers, Inc.*,

274 F.R.D. at 93-94 (dissemination of confidential and privileged information to persons

within an organization "not shown to have a need to know such information" waives the

attorney client privilege).  Accordingly, Bates No. CFS-PRIV0017 must be produced.

Bates No. CFS-PRIV0018 is a March 21, 2007 email from Romano to CFS

employees Tarbox, and Loesch, copied to Joyce.  The specific basis for asserting this

communication is protected by the attorney-client privilege is not clear from the record

given that it does not, on its face, appear to be a communication between a client and

an attorney.  Nor is there any request within the text of the communication for legal

advice or services and, as such, the communication is not protected by the attorney-

client privilege.  *Construction Products Research, Inc.*, 73 F.3d at 473.  Moreover,

although Tarbox and Joyce are identified in the First Privilege Log as CFS employees,

Defendant offers no explanation as to why Tarbox and Joyce needed to know the

information contained in the communication such that even if the attorney-client

privilege attached to the communication, the dissemination of the communication to

others without a need to know waived the privilege.  *See Robbins & Meyers, Inc.*, 274

F.R.D. at 93-94.  CFS has therefore failed to carry its burden establishing these

documents are protected.  *See Adlman*, 68 F.3d at 1499 (party asserting the attorney-client privilege has burden to establish the essential elements of the privilege).

Bates No. CFS-PRIV0019 consists of a facsimile cover sheet on CFS letterhead and dated March 22, 2007, indicating the facsimile is being sent from Romano to Carlson regarding Plaintiff.  This communication, although to an attorney, does not seek legal advice or services and, as such, is not protected by the attorney-client privilege and must be produced.

Bates No. CFS-PRIV0020 is a March 23, 2007 email from Romano to Carlson from whom Romano requests legal advice regarding Plaintiff.  There is no indication the communication has been disseminated to anyone else.  Because the communication is between an attorney and client seeking legal advice, with no indication the communication was not kept confidential, it is protected by the attorney-client privilege and need not be produced.

Bates Nos. CFS-PRIV0021 and CFS-PRIV0023, which are identical, are a March 23, 2007 email from Romano to Freebern, copied to Meeks, Clark, Stewart, Carlson, and Long, discussing the need to notify Defendant's liability insurance carrier of the possibility that a discrimination claim will be filed by Plaintiff against Defendant. Although Defendant describes this communication as an "Email concerning legal advice re: Lolonga-Gedeon," First Privilege Log, Bates Nos. CFS-PRIV0021, and CFS-PRIV0023, a review of the communication's text establishes it addresses notice to Defendant's liability insurance carrier and seeks neither legal advice nor services.  As such, the attorney-client privilege has not attached to the communication, which must be produced.

Bates No. CFS-PRIV0026 is a facsimile coversheet on CFS letterhead, dated March 27, 2007, and indicating Romano was sending to Carlson one document regarding Plaintiff.  Defendant asserts that the attached document has already been produced to Plaintiff, but the cover sheet was withheld to prevent Plaintiff from learning that the attached document Defendant had already produced to Plaintiff had also been provided to Defendant's counsel to obtain legal advice and, and, as such, was a shielded communication.  Defendant's Memorandum at 3.  Defendant references no caselaw in support of the novel assertion that the fact that a document has been shared with an attorney vests the document with the attorney-client privilege and the court's research has revealed none.  It is significant that because Defendant has already produced to Plaintiff the document attached to the cover sheet, any attorney-client privilege that could have attached to such document has been waived.  Moreover, although the cover sheet is addressed to an attorney, no legal advice or services are sought and, as such, this communication is not protected by the attorney-client privilege and must be produced.

Bates No. CFS-PRIV0041 is an email dated April 5, 2007, from Romano to Carlson seeking advice from Carlson as to how to respond to questions posed by CFS's liability insurance carrier regarding Plaintiff.  Because this communication consists of a client's request to an attorney for legal advice under circumstances suggesting it was intended to be confidential, and in the absence of any indication that the communication was disseminated to any third-party thereby destroying confidentiality, it is protected by the attorney-client privilege and need not be produced.

Bates Nos. CFS-PRIV0043 through and including CFS-PRIV0046 is comprised

of an email dated April 5, 2007 from Carlson to Romano, responding to Romano's

request contained in Bates No. CFS-PRIV0041, attached to which are documents for

Carlson's review detailing Defendant's attempts to verify Plaintiff's education.  There is

no indication that this apparently confidential communication, from a client seeking legal

advice to an attorney, was disseminated to anyone other than Carlson and Romano.

Accordingly, the communication is protected by the attorney-client privilege and need

not be produced.

      Bates No. CFS-PRIV0051 contains two emails, both dated June 7, 2007, albeit

sent two hours apart, by Romano to Joyce and Loesch, and copied to Stewart.  The

earlier email discusses the receipt of documentation that did not support Plaintiff's claim

that she had earned the equivalent of a bachelor's degree, while the latter email further

advises that Defendant's attorney had approved of the source of the information

contained in the earlier email.  Although these communications discuss attempts to

obtain documentation verifying Plaintiff's asserted education, there is no indication they

constitute a confidential communication with Ms. Carlson; in any event, their

dissemination to Joyce, Loesch, and Stewart without Defendant first establishing each

of these persons had a need to know the information contained therein has waived any

possible attorney-client privilege such that the communication must be produced.

      Bates No. CFS000085 is a facsimile coversheet on CFS letterhead, dated March

20, 2007, indicating Romano was sending Carlson via facsimile transmission 12 pages

of documentation regarding Plaintiff, and requesting Carlson telephone Romano upon

receiving the information.  The communication itself, however, does not request legal

advice or services.  As such, the communication is not protected and must be

produced.

Bates No. CFS000301 is a facsimile coversheet on CFS letterhead, dated March 6, 2007, indicating Romano was sending Carlson via facsimile transmission 10 pages of documentation.  Unlike Bates No. CFS000085, Bates No. CFS000301 does not indicate the subject of documentation.  As with Bates No. CFS-PRIV0026, Defendant asserts that the attached documents have already been produced to Plaintiff, but the cover sheet was withheld to prevent Plaintiff from learning that the attached documents Defendant had already produced to Plaintiff had also been provided to Defendant's counsel to obtain legal advice and, as such, the cover sheet is a shielded communication.  Defendant's Memorandum at 3.  Nevertheless, the communication itself does not request legal advice or services and, as such, is not protected by the attorney-client privilege and must be produced.

Bates No. CFS000859 is a facsimile coversheet on CFS letterhead, dated March 16, 2007, indicating CFS Human Resource Assistant Amanda Diamond ("Diamond") was sending Carlson, via facsimile transmission, six pages of documentation regarding Plaintiff.  Defendant again asserts that the attached documents have already been produced to Plaintiff, but the cover sheet was withheld to prevent Plaintiff from learning that the attached documents Defendant had already produced to Plaintiff had also been provided to Defendant's counsel to obtain legal advice and, and, as such, the cover sheet is a shielded communication.  Defendant's Memorandum at 3. The communication, however, contains no other text that could be construed as seeking legal advice or services.  Accordingly, the attorney-client privilege never attached to the communication and it must be produced.

Bates No. CFS000876 consists of two emails, both dated March 8, 2007, exchanged between Romano and Carlson.[5]  In the earlier email, Romano requests legal advice regarding Plaintiff, and in the latter email, Carlson responds to Romano's request with legal advice.  The circumstances of the exchange suggests the communication to Carlson was intended by CFS to be confidential.  There is no indication the communications were ever disseminated to anyone else, such that the attorney-client privilege that attached to the communications continues to protect the communications from disclosure.

Bates No. CFS000973 contains two emails, both dated July 27, 2007, exchanged between Romano and Carlson.[6]  In the earlier email, Romano requests Carlson's reaction to another email, already produced to Plaintiff, regarding the conferment of Plaintiff's college degree suggesting its confidential nature.  In the latter email, Carlson provides her interpretation of the earlier email.  There is no indication the redacted communications were ever disseminated to anyone else.  Accordingly, the attorney-client privilege protects the communications contained in the two emails exchanged between Romano and Carlson and need not be produced.

---

[5] Bates No. CFS000876 actually contains three emails, including the two exchanged between Romano and Carlson, and an earlier email also dated March 8, 2007, from Plaintiff to one M.J. Cartwright ("Cartwright"), copied to Romano, regarding the academic credits Plaintiff had earned, and which has already been provided to Plaintiff.  As is indicated by highlighting, the earlier email exchanged between Plaintiff and Cartwright was already provided to Plaintiff, while the two emails between Romano and Carlson were redacted.

[6] Similar to Bates No. CFS000876, Bates No. CFS000973 also contains three emails, including the two exchanged between Romano and Carlson on July 27, 2007, and an earlier email also dated July 27, 2007 from Plaintiff to Loesch, and Tarbox, copied to Joyce, regarding one Jeanne Kratt who, although eligible to receive a degree, failed to apply for its conferment.  As is indicated by highlighting, the email exchanged between Romano and Loesch and Tarbox was already provided to Plaintiff, while the two emails between Romano and Carlson were redacted.

In summary, Bates Nos. CFS-PRIV0012, CFS-PRIV0013, CFS-PRIV0014, CFS-PRIV0015, CFS-PRIV0020, CFS-PRIV0041, CFS-PRIV0043, CFS-PRIV0044, CFS-PRIV0045, CFS-PRIV0046, CFS000876, and CFS000973, are protected by the attorney-client privilege and need not be produced.  Bates Nos. CFS-PRIV0016, CFS-PRIV0017, CFS-PRIV0018, CFS-PRIV0019, CFS-PRIV0021, CFS-PRIV0023, CFS-PRIV0026, CFS-PRIV0051,CFS000085, CFS000301, and CFS000859, however, are not protected by the attorney-client privilege, either because the privilege never attached, or the privilege has been waived through dissemination of the communication to those without a demonstrated need to know the information sufficient to avoid a waiver of any privilege, and must be produced.

## 3.    Work Product

Defendant has withheld from Plaintiff 23 documents on the basis that the documents were prepared in anticipation of litigation and are thus protected as work product.  The withheld documents include Bates Nos. CFS-PRIV0022, CFS-PRIV0024, CFS-PRIV0025, CFS-PRIV0027 through and including CFS-PRIV0040, CFS-PRIV0042, and CFS-PRIV0047 through and including CFS-PRIV0051.  All such withheld documents are communications between Defendant and its insurance carrier except for Bates Nos. CFS-PRIV0022 and CFS-PRIV0024 which are between Romano and CFS Senior Accountant with CRJ Freebern.  Defendant's Memorandum at 2, n. 5, and 4.  According to Defendant, disclosure of communications between insured litigants and their insurance carriers could hamper litigation by rendering the insured litigants unable to comply with their duty to disclose information required by the insurance

carrier, without risking having to later disclose such information to litigation adversaries. *Id.* at 3-4.  Plaintiff has not responded in opposition to this argument.

The so-called "work product doctrine" is codified in Fed.R.Civ.P. 26(b)(3) which provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent.)."  The work-product doctrine "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947).  A party asserting the work product doctrine must demonstrate that "the documents were prepared principally or exclusively to assist in anticipated or ongoing litigation." *Construction Products Research, Inc.*, 73 F.3d at 473 (citing Fed. R. Civ. P. 26(b)(3) and cases).  Documents prepared in the ordinary course of business are not protected as work product unless the proponent of the protection demonstrates that the documents would not have been created "but for" the prospect of litigation. *Adlman*, 134 F.3d at 1202-04.  As with the attorney-client privilege, the work product doctrine is to be strictly construed, with the burden on the proponent to establish its applicability and non-waiver.  *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007) ("the party invoking the [work product] privilege bears the heavy burden of establishing its applicability.").

With regard to "documents prepared by or for an insurance company, federal courts generally take a fact specific approach in determining the applicability of the

doctrine." *Selective Insurance Company of America v. Swarey*, 2011 WL 240750, at * 1 (W.D.N.Y. Jan. 24, 2011).  "Because the very business of insurance companies is to investigate and evaluate claims that might erupt into litigation, 'without some limiting principle virtually the entirety of an insurance company's files would be exempt from discovery.'"  *Id.* (quoting *American Ins. Co. v. Elgot Sales Corp.*, 1988 WL 647206, at * 1 (S.D.N.Y. Sept. 21, 1998)).  "Generally, '[a]n investigation that is undertaken to determine whether there is coverage, whether the claim should be paid and whether a subrogation claim could be pursued, is not undertaken in anticipation of litigation.'"  *Id.* (quoting *Nicklasch v. JLG Indus., Inc.*, 193 F.R.D. 568, 570 (S.D.Ind. 1999)).

"[T]he issue of work-product protection is particularly complicated in the context of insurance claims, since insurance companies are 'in the business of investigating and adjusting claims,' thereby blurring the distinction between documents prepared in the ordinary course of business and those prepared because of anticipated litigation." *Koppel v. United National Insurance Co., Inc.*, 2008 WL 5111288, at * 1 (E.D.N.Y. Nov. 26, 2008) (quoting *Mount Vernon Fire Ins. Co. v. Platt*, 1999 WL 892825, at *2 (S.D.N.Y. Oct. 19, 1999)).  "'In the context of insurance company cases it has been recognized that at a certain point an insurance company's activity shifts from the ordinary course of business to anticipation of litigation.'"  *Swarey*, 2011 WL 240750, at * 2 (quoting *American Ins. Co.*, 1988 WL 647206, at *1 (internal quotation and citation omitted)).  As such, "[t]he relevant inquiry is 'when the insurance company shifted its focus from collecting information and evaluating a claim to preparation for a lawsuit.'" *Id.* (quoting *Taroli v. General Electric Co.*, 114 F.R.D. 97, 99 (N.D.Ind. 1987), *aff'd*, 840 F.2d 920 (7th Cir. 1988).  "'[C]ourts frequently presume that investigative reports

prepared by or for an insurer prior to a coverage decision are prepared in the ordinary course of the insurer's business and are not afforded work-product protection.'" *105 Street Associates, LLC v. Greenwich Ins. Co.*, 2006 WL 3230292, at *2 (S.D.N.Y. Nov. 7, 2006) (quoting *Mount Vernon Fire Insurance Company v. Try 3 Building Services, Inc.*, 1998 WL 729735, at *6 (S.D.N.Y. Oct. 16, 1998)).  In the instant case, a review of the documents Defendant has withheld as work product establishes that they are not protected by that doctrine.

    In particular, with the exception of Bates No. CFS-PRIV0051, all the documents to which Defendant asserts protection from disclosure as work product were prepared between March 23, 2007 and April 9, 2007, well before Plaintiff filed her administrative claim with DHR on May 30, 2007.  Further, Defendant has not submitted any affidavit made by someone with personal knowledge or other documentation establishing that Defendant received any notice that Plaintiff was actually pursuing any claim for which Defendant would have sought coverage from its insurer prior to the dates of these communications.  *See 105 Street Associates, LLC*, 2006 WL 3230292, at *2 (refusing to extend work product protection to investigative reports prepared by or for an insurer prior to a coverage decision).  Moreover, Bates Nos. CFS-PRIV0022 and CFS-PRIV0024, consist of emails dated March 23, 2007, exchanged between Romano and Freebern discussing the telephone number for the insurance claims representative to be contacted in case Plaintiff were to file a claim and makes no reference to any legal theory or strategy.  *Adlman*, 134 F.3d at 1204 ("The Memorandum falls within the most protected category of work product - that which shows the 'mental impressions, conclusions, opinions or legal theories of an attorney or other representative.'" (quoting

Fed.R.Civ.P. 26(b)(3))).  Similarly, although Bates No. CFS-PRIV0025 contains emails

exchanged on March 26, 2007 between Romano and one Charmaine A. Derenda

("Derenda"), an insurance claim representative with Walsh Duffield, Defendant's

insurance agent, and mentions that an employment discrimination action is anticipated,

the emails merely refer to Defendant's need to document why Plaintiff is being

terminated from CFS.  Bates Nos. CFS-PRIV0027 through and including CFS-

PRIV0032 is a communication from Mark A. Frombach ("Frombach"), Sr. Professional

Liability Examiner with Defendant's insurer, Philadelphia Insurance Companies ("PIE")

to Romano enclosing a copy of portions of Defendant's liability insurance policy that

may be relevant to any claim Plaintiff were to file regarding the termination of her

employment.  Again, these documents do not contain any legal theory or strategy .

Other documents that are devoid of any legal theory or strategy include Bates No. CFS-

PRIV0033 which is a copy of an envelope bearing a return address for PIE, Bates No.

CFS-PRIV0034 which is a handwritten note with a telephone number for Frombach at

PIE and the notation "Notice of Potential Claim" with a number and Plaintiff's name,

Bates No. CFS-PRIV0035 which is more handwritten notes, the author of which is not

revealed, Bates Nos. CFS-PRIV0036 through and including CFS-PRIV0040, CFS-

PRIV0042, and CFS-PRIV0047 through and including CFS-PRIV0050 which are emails

dated between March 29, 2007 and April 9, 2007, and discussing general information

about Plaintiff's employment with CFS, but no legal theory or strategy.  Finally, Bates

No. CFS-PRIV0051 is comprised of two emails dated June 7, 2007, after Plaintiff filed

her administrative employment discrimination claim with DHR, exchanged between

Romanno, Joyce, Loesch, and Stewart, discussing documentation regarding Plaintiff's

education credentials.  Nevertheless, these emails also fail to reveal any legal theory or strategy and, as such, are not protected as work product.

In short, none of the documents which Defendant maintains are work product are protected as such and must be produced.


### 4.    Mediation Privilege

Defendant has withheld from production Bates Nos. CFS-PRIV0001 through and including CFS-PRIV0011, and redacted portions of Bates Nos. CFS000023 and CFS000025, on the basis that such communications are mediation materials that are protected from disclosure pursuant to N.Y. Judiciary Law § 849-b[6] ("§ 849-b[6]"). Defendant's Memorandum at 4-7.  According to Defendant, the privilege created by New York in § 849-b[6] exempts from discovery a mediator's memoranda, work product, and case files, as well as communications pertaining to the subject matter of the resolution made during the resolution process by any mediation participant or others present during mediation.  *Id.* at 4-5.  In support of its argument, Defendant submits the affidavit of Dan Weitz ("Weitz") (Doc. No. 146), Deputy Director of the Division of Professional and Court Services for New York's Unified Court System, Office of Court Administration ("OCA").  Weitz explains that the Community Dispute Resolution Centers ("CDRC") provide mediation services to the public under a contract with the OCA and pursuant to Article 21-A of New York's Judiciary Law ("Art. 21-A").  Weitz Affidavit ¶ 2. The CRJ, operated by Defendant, qualifies as a CDRC providing mediation services pursuant to Art. 21-A under the CDRC's contract with the OCA. *Id.* ¶ 3.  As such, any mediation case files prepared by the CRJ are protected as confidential under Art. 21-A

and § 849-6(b).  *Id.* ¶¶ 4-6.  Because Plaintiff has not filed any papers opposing Defendant's assertions of privilege, Weitz's explanation that the CRJ's mediation services are provided pursuant to Art. 21-A under the CDRC's contract with the OCA is unchallenged.

"An assertion of privilege may preclude the admission of relevant evidence, but only to the extent the privilege is recognized 'by the principles of the common law as they may be interpreted by the courts of the United States.'"  *United States v. One Parcel of Property Located at 31-33 York Street*, 930 F.2d 139, 141 (2d Cir. 1991) (quoting Fed.R.Evid. 501 ("Rule 501")).  Pursuant to Rule 501, where federal law supplies the rule of decision regarding a claim or defense, the common law, as interpreted by federal courts, governs a claim of privilege unless otherwise provided by the Constitution, a federal statute, or rules prescribed by the Supreme Court.  Here, because Plaintiff's employment discrimination claims are brought pursuant to Title VII, a federal law applies to such claims and Defendant's claims of privilege are pursuant to common law.  Although the mediation privilege on which Defendant relies has been created by state statute rather than the common law, generally "as a matter of comity federal courts accord deference to state-created privileges, [albeit] such privileges are construed narrowly, and must yield when outweighed by a federal interest in presenting relevant information to a trier of fact."  *One Parcel of Property Located at 31-33 York Street*, 930 F.2d at 141 (citing *Memorial Hospital v. Shadur*, 664 F.2d 1058, 1061-63 (7th Cirt. 1981), and *Von Bulow v. Von Bulow*, 811 F.2d 136, 141 (2d Cir.), *cert. denied*, 481 U.S. 1015 (1987)).

The CDRC Program was established in 1981 by N.Y. Jud. Law §§ 849-a to 849-

g, in response to a "compelling need for the creation of . . . alternatives to structured

judicial settings." *United States v. Gullo*, 672 F.Supp. 99, 102 (W.D.N.Y. 1987).  New

York Judiciary Law establishes that the CDRC program is "to be administered and

supervised under the direction of the chief administrator of the courts, to provide funds

pursuant to this article [Art. 21-A] for the establishment and continuance of dispute

resolution centers on the basis of need in neighborhoods."  N.Y. Jud. Law § 849-b[1].

Each program is to be operated by a grant recipient.  *Id.* § 829-b[2].  Further, all CDRCs

are to be operated pursuant to a contract with the chief court administrator in

compliance with Art. 21-A, and the chief administrator is vested with authority to

promulgate rules and regulations to effectuate the purposes of Art. 21-A.  *Id.* § 849-b[3].

Accordingly, based on the statements by Weitz, undisputed by Plaintiff, the CRJ

qualifies as a CDRC providing mediation services pursuant to Art. 21-A under the

CDRC's contract with the OCA.

> Of particular relevance to this case, § 849-b[6] provides
>
> Except as otherwise expressly provided in this article, all memoranda, work
> product, or case files of a mediator are confidential and not subject to disclosure
> in any judicial or administrative proceeding.  Any communication relating to the
> subject matter of the resolution made during the resolution process by any
> participant, mediator, or any other person present at the dispute resolution shall
> be a confidential communication.

N.Y. Jud. Law § 849-b[6].

Accordingly, § 849-b[6] creates a privilege to which, generally, "as a matter of comity

federal courts accord deference. . . ."  *One Parcel of Property Located at 31-33 York

Street*, 930 F.2d at 141.

This court's research has revealed that in the only reported federal case

discussing the mediation material privilege created by § 849-b[6], the court balanced

four factors in deciding whether to recognize the privilege.  *United States v. Gullo*, 672

F.Supp. 99, 103-04 (W.D.N.Y. 1987), a criminal case in which the defendant sought

dismissal of an indictment based on the fact that statements the defendant had made

during a dispute resolution process at a community dispute resolution center were

privileged and should have been suppressed from the grand jury.  The four balancing

factors included (1) the need for the information to enforce substantive and procedural

policies; (2) the importance of the relationship or policy sought to be furthered by the

state-created privilege and the likelihood the privilege would advance the relationship or

policy; (3) the special need for the information sought to be protected; and (4) any

adverse impact on the local policy resulting from not recognizing the privilege.  *Id.* at

104.  Upon balancing the four factors, the court found that although the first factor

weighed against the privilege, under the second and fourth factors, failing to recognize

the privilege could seriously discourage participation in the dispute resolution program,

interfering with the program's effectiveness and placing funding for the program in

jeopardy, and that the government had failed to show any particularized need for the

information. *Id.*  As such, the court, pursuant to Rule 501, recognized the privilege

afforded by § 849-b[6], suppressing from use at a criminal trial all statements made

during dispute resolution involving the defendant, but refused to dismiss the indictment

on the basis that the disclosure of such privileged materials to the grand jury, in the

absence of any evidence establishing the use of such information was prejudicial to the

defendant, did not require dismissal.  *Id.* at 103-04.

      Similarly, the only reported New York case is *People v. Snyder*, 492 N.Y.S.2d

890 (N.Y.Sup.Ct., Erie Co., 1985), a criminal proceeding for murder and criminal possession of a weapon.  In *Snyder*, the district attorney subpoenaed from a community dispute resolution center all records pertaining to mediation efforts between the defendant and the victim.  *Snyder*, 492 N.YS.2d at 891.  The court, noting that "[t]here appears to be no reported case construing Section 849-b[6] of the Judiciary Law," granted the defendant's motion to quash a subpoena for the mediation records because "[t]o grant the District Attorney's request to review the records of the Community Dispute Resolution Center would subvert the legislature's clear intention to guarantee the confidentiality of all such records and communications."  *Id.* at 842. Because the only two reported cases that have considered § 849-b[6] have recognized the privilege created thereunder, this court also recognizes it.

Balancing the four factors considered in *Gullo*, 672 F.Supp. at 104, establishes that the mediation privilege under § 849-b[6] should be applied in the instant case.  In particular, "[d]iscovery rules 'are to be accorded a broad and liberal treatment [ ] to effectuate their purpose that civil trials in the federal courts no longer need be carried on in the dark.'"  *Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165, 170 (2d Cir. 2003) (quoting *Schlagenhauf v. Holder*, 379 U.S. 104, 115 (1964)).  The first fact thus weighs against recognizing the privilege.  The second and fourth factors, however, weigh in favor of the privilege as the failure to recognize the privilege could interfere with frank discourse in mediation, discourage participation in the dispute resolution program, and jeopardize funding for the CDRC program.  As for the third factor, Plaintiff has failed to demonstrate any particular need for materials from mediation cases on which she may have worked while employed with Defendant.  Accordingly, the factors weigh in favor of

recognizing the privilege and the court thus considers whether Defendant's withholding of information as privileged under § 849-b[6] was proper.[7]

Bates Nos. CFS-PRIV0001through and including CFS-PRIV0003, and CFS-PRIV0007 through and including CFS-PRIV0009 consist of case notes pertaining to CRJ Case No. CQ4678, CFS-PRIV0004 through and including CFS-PRIV0006 is a case summary for CRJ Case No. CQ4678, and Bates Nos. CFS-PRIV0010 through and including CFS-PRIV0011 are case notes pertaining to CRJ Case No. CQ-4476.[8]  A review of these documents establishes they consist of notes and a case summary prepared in connection with mediation of two separate cases at the CRJ.  Because the statements contained in Bates Nos. CFS-PRIV0001 through and including CFS-PRIV0011 were made in the course of mediation at the CRJ, such statements are, pursuant to § 849-b[6], confidential and not subject to disclosure.

Bates Nos. CFS000023 and CFS000025[9] are redacted mediation materials exchanged between CFS employee Kristen M. Wright ("Wright") and Romano, dated December 16, 2006, and described by Defendant as "Quality Concerns."  Each of these documents consists of what appear to be case notes from a mediation file, single-spaced, which have already been disclosed to Plaintiff, with the exception of the

---

[7] This conclusion is consistent with the policy foundation for Fed.R.Evid. 408 rendering settlement discussions as inadmissible evidence.

[8] A plain reading of the documents comprising Bates Nos. CFS-PRIV0001 through and including CFS-PRIV0011 establishes that Defendant has mistakenly described them in the First Privilege Log.  In particular, Defendant describes Bates Nos. CFS-PRIV0001 through CFS-PRIV0002 as the "Case Summary re: Case No. CQ4678," Bates No. CFS-PRIV0003 as "CQ4678 Case Notes," and Bates Nos. CFS-PRIV0004 through and including CFS-PRIV0011 as "CQ4476 Case Notes."  First Privilege Log.

[9] Attached to Third Privilege Log, Defendant's Exh. C.

redaction of one surname in its entirety, and the redaction of four partial names, save for the initials.  Given that these materials qualify as mediation materials, the redacted portions of Bates Nos. CFS000023 and CFS000025 are privileged under § 849-b[6] and need not be disclosed.

Defendant need not disclose any of the materials Defendant asserts are privileged under § 849-b[6], including Bates Nos. CFS-PRIV0001 through and including CFS-PRIV0011, CFS000023 and CFS000025.


### CONCLUSION

Upon in camera review, Defendants are to produce Bates Nos. CFS-PRIV0016 through and including CFS-PRIV0019, CFS-PRIV0021 through and including CFS-PRIV0040, CFS-PRIV0042, and CFS-PRIV0047 through and including CFS-PRIV0051, CFS000085, CFS000301, and CFS000859.  Defendants need not produce Bates Nos. CFS-PRIV0001 through and including CFS-PRIV0015, CFS-PRIV0020, CFS-PRIV0041, CFS-PRIV0043 through and including CFS-PRIV0046, CFS000023, CFS000025, CFS000876, and CFS000973.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      May 15, 2012
            Buffalo, New York